**SIGNED THIS: January 3, 2012**

_____
**Thomas L. Perkins**
**United States Chief Bankruptcy Judge**
_____

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CHESTER SHANE McVAY | ) | Case No.  10-82723 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| HALLIBURTON ENERGY SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 10-8138 |
| | ) | |
| CHESTER SHANE McVAY, | ) | |
| | ) | |
| Defendant. | ) | |

### O P I N I O N

This matter is before the Court on the motion for summary judgment filed by the

Plaintiff, Halliburton Energy Services, Inc. (HES), seeking to give issue preclusive effect to

an arbitration award.

HES commenced the arbitration proceeding on January 17, 2006, against its former

employee, the Debtor, Chester S. McVay (DEBTOR), before the Employment Arbitration

Tribunal of the American Arbitration Association pursuant to an arbitration provision contained in the employment agreement between the parties. In December, 2006, evidence was taken by arbitrator Karen K. Fitzgerald, briefs were submitted, and the arbitrator issued a 20-page written decision entitled "Final Award" on March 21, 2007.

The Final Award identifies the claims asserted by HES as follows:

1.      breach of the Intellectual Property Agreement (IPA), and
2.      breach of the agreement to arbitrate.

During the arbitration, HES sought to add a claim for the tort of misappropriation of trade secrets, but leave to amend was denied. The specific relief sought by HES included return of property, damages resulting from the DEBTOR'S breach of the IPA, attorney fees, and a permanent injunction. The DEBTOR asserted counterclaims against HES including a declaratory judgment that he, not HES, is the rightful owner of a program identified as the "standard industry software program."

The claims revolve around the IPA executed by the DEBTOR when he began working for HES in January, 2001, in Dallas, Texas. He resigned in early January, 2006, to take a job with Caterpillar. The arbitrator found that before he left HES, the DEBTOR transferred a large amount of computer stored data to a thumb drive and copied and removed "hundreds of pages of HES documents." He was asked at his exit interview to return all documents and electronic files in his possession as required by the IPA. During the exit interview, the DEBTOR expressed his belief that he, not HES, owned the disputed software program.

Within days of the exit interview, HES sued for and obtained a Temporary Restraining Order preventing the DEBTOR from removing from the state of Texas any

documents or property belonging to HES and ordering their return within five days. Although the DEBTOR turned over both computers and all paper copies of HES documents in his possession, he took the undisclosed thumb drive with him when he moved to Iowa to work for Caterpillar.  Ultimately, the DEBTOR turned over the thumb drive to HES in December, 2006.  The DEBTOR had deleted the materials off of the thumb drive, but they could be recovered and viewed through a special data recovery software program.

The arbitrator concluded that the DEBTOR "breached the IPA by refusing to return HES property to HES when requested."  She also concluded that the DEBTOR breached the IPA by disclosing confidential HES documents to third parties, including his father.  The arbitrator also awarded injunctive relief to prevent the dissemination or use of HES information.

HES attempted to add a claim for breach of fiduciary duty in its Post-hearing Brief, but the arbitrator denied that late addition.  The Final Award indicates that HES had also sued the DEBTOR'S father, Leland McVay, in Oklahoma for an injunction against his potential use or dissemination of HES proprietary information.   In the arbitration proceeding, HES sought reimbursement of the attorney fees incurred in that action, contending that "it was [the DEBTOR'S] tort that required HES to act to protect its interests by filing the lawsuit against Leland McVay."  The arbitrator determined that the fees were not recoverable as damages against the DEBTOR for his breach of the IPA.

With respect to the counterclaim that he be awarded ownership of the disputed software program, the DEBTOR argued that he developed the basic program on his own

3

time and not as an employee of HES. The arbitrator agreed, finding that he developed the original program "on his own time in the evenings at his house," that he "never shared this program with HES," and that this work was not done as part of his job duties for HES. The arbitrator determined the evidence established, however, that over time the DEBTOR did begin to work on the software as part of his job duties for HES. Eventually, he shared the program with HES and made changes and modifications to it as instructed or requested by HES. The arbitrator determined that the final, modified version (the November, 2004, version) was substantially developed by the DEBTOR as part of his employment with HES. The IPA provides that any original work of authorship under the Copyright Act of 1976 that the DEBTOR creates as an HES employee shall be considered a work made for hire, to which HES shall have the sole and exclusive right, title and interest (including trade secret and copyright interests). Based on that contract provision, the arbitrator determined that HES, not the DEBTOR, owned the November, 2004, version of the software program.

The arbitrator awarded HES injunctive relief, a declaratory judgment that it owned the disputed program, damages for breach of contract in the amount of $24,047.27, attorney fees of $150,000 for pursuit of the breach of contract claim and expert witness costs of $20,944.15. The monetary awards total $194,991.42. On the DEBTOR'S counterclaims, the arbitrator found that the DEBTOR was entitled to a "take nothing judgment." Except for the limited application of the federal copyright laws, the arbitrator looked to Texas state law to provide the substantive rules of decision.

Following issuance of the Final Award, the DEBTOR brought an action in the U.S. District Court for the Northern District of Texas to vacate the arbitrator's decision. On

November 13, 2009, the magistrate judge issued recommended findings and conclusions that the arbitration award be confirmed, not vacated. On January 22, 2010, the district court adopted the magistrate's recommendation and entered a judgment confirming the award. The DEBTOR filed an appeal with the Court of Appeals for the Fifth Circuit, which remains pending.

The DEBTOR filed his voluntary Chapter 7 petition in this Court on August 30, 2010, listing HES as an unsecured creditor. After investigating the DEBTOR'S financial situation, the Chapter 7 Trustee filed a no asset report meaning the estate has no assets with which to make a distribution to creditors.

HES filed a timely adversary complaint on December 20, 2010, seeking a determination that the debt evidenced by the Final Award is not dischargeable, first, under section 523(a)(4) of the Bankruptcy Code, as a debt for fraud or defalcation while acting in a fiduciary capacity or as one arising from embezzlement; and second, under section 523(a)(6), as a debt for willful and malicious injury to another entity or to the property of another entity.

The complaint also seeks to have the DEBTOR'S discharge denied entirely, first, under section 727(a)(2), alleging that the DEBTOR, with intent to hinder, delay or defraud, has transferred, removed, destroyed, mutilated, or concealed his property within one year before bankruptcy or permitted same, or property of the estate after the filing; second, under section 727(a)(4), alleging that he knowingly and fraudulently made false oaths in the course of this bankruptcy proceeding by failing to disclose the existence or transfer of assets; and, third, under section 727(a)(3), alleging that the DEBTOR, without justification,

concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which his financial condition or business transactions might be ascertained.

The motion for summary judgment filed by HES seeks judgment only as to the two nondischargeability claims brought under section 523, and not as to the three denial of discharge claims brought under section 727. The motion is premised entirely on the issue preclusive effect of the Final Award issued by the arbitrator and confirmed by the district court. HES contends that the findings of fact made by the arbitrator, by themselves, entitle it to summary judgment on the nondischargeability claims. HES argues that the same issues of fact are at issue here and that the DEBTOR is collaterally estopped from relitigating them.

Under Federal Rule of Civil Procedure 56, made applicable to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In order to prevail on a motion for summary judgment, the moving party must establish there is no genuine issue of material fact as to any essential element of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When a moving party has met its initial burden of showing there is no genuine issue of material fact, the burden shifts to the non-movant to go beyond the pleadings and come forward with specific facts showing that there is a

6

genuine issue for trial.  Inferences to be drawn from underlying facts must be viewed in

the light most favorable to parties opposing the motion.  *In re Chambers*, 348 F.3d 650 (7th

Cir. 2003).  A material factual dispute is sufficient to prevent summary judgment only

when the disputed fact is determinative of the outcome under applicable law.  It is not the

role of the trial court to weigh the evidence or to determine its credibility, and the moving

party cannot prevail if any essential element of its claim for relief requires trial.  *Anderson*,

477 U.S. at 249, 106 S.Ct. at 2511.

The doctrine of collateral estoppel or issue preclusion bars the relitigation of issues

decided in a prior proceeding involving the same parties.  It is well-established that where

a federal court is presented with a prior judgment issued by a state court, the law of that

state determines its issue preclusive effect.  *Marrese v. American Academy of Orthopaedic

Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331-32, 84 L.Ed.2d 274 (1985); *Wozniak v. DuPage

County,* 845 F.2d 677, 682 (7th Cir. 1988).  This principle derives from the full faith and

credit statute, 28 U.S.C. § 1738, which refers to judicial proceedings of any court of any

state.  But arbitration is not a judicial proceeding and § 1738 does not apply to arbitration

awards.  *McDonald v. City of West Branch, Mich.,* 466 U.S. 284, 287-88, 104 S.Ct. 1799, 1801-02,

80 L.Ed.2d 302 (1984).

It is not settled whether arbitration proceedings will have any preclusive effect on

the subsequent litigation of federal claims.  *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213,

222-23, 105 S.Ct. 1238, 1243, 84 L.Ed.2d 158 (1985); *E.E.O.C. v. Frank's Nursery & Crafts, Inc.,*

177 F.3d 448, 463 n.8 (6th Cir. 1999).  HES relies on the fact that the Final Award was

challenged and affirmed in federal district court.  When a court reviews and affirms an

7

arbitration award, the substance of the review process becomes important. The issue is whether the prior proceeding afforded the litigant a full and fair opportunity for a judicial determination of the issues on their merits. *Ryan v. City of Shawnee,* 13 F.3d 345 (10th Cir. 1993).

The preclusive effect of a federal court judgment is determined by federal common law, but the rule of decision differs depending upon whether the federal court's jurisdiction over the issue was based on diversity or federal question. *Taylor v. Sturgell,* 553 U.S. 880, 891, 128 S.Ct. 2161, 2171, 171 L.Ed.2d 155 (2008). Under federal common law, a federal diversity judgment is to be accorded the same preclusive effect that would be applied by the state courts in the state in which the federal diversity court sits. *Id.* at 891, n.4; *Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 508, 121 S.Ct. 1021, 1028, 149 L.Ed.2d 32 (2001). For judgments in federal question cases, federal common law supplies the rule of decision. *Taylor,* 553 U.S. at 891. So Texas law applies here as the federal court that confirmed the Final Award, did so in the exercise of its diversity jurisdiction.

The pendency of an appeal from the prior judgment prevents issue preclusion in some states. In Illinois, for example, finality requires that the potential for appellate review must have been exhausted. *Ballweg v. City of Springfield,* 114 Ill.2d 107, 113, 499 N.E.2d 1373 (1986). The Texas Supreme Court, however, has adopted the rule that a judgment is final for the purposes of issue and claim preclusion despite the taking of an appeal unless what is called an appeal actually consists of a trial *de novo. Scurlock Oil Co. v. Smithwick,* 724 S.W.2d 1 (Tex. 1986). In confirming the Final Award, the district court applied section 10(a) of the Federal Arbitration Act, 9 U.S.C. § 10(a), which provides for a limited review of an

arbitration award and does not contemplate a new trial or a review of the findings of fact made by the arbitrator. The Court therefore concludes that under applicable Texas law, the pendency of the appeal to the Fifth Circuit does not prevent the arbitration award from being considered "final" for collateral estoppel purposes.

Under Texas law, a party seeking to apply the bar of collateral estoppel must establish that:

1.    the facts sought to be litigated in the second action were fully and fairly litigated in the first action;

2.    those facts were essential to the judgment in the first action; and

3.    the parties were cast as adversaries in the first action.

*Sysco Food Services, Inc. v. Trapnell,* 890 S.W.2d 796, 801 (Tex. 1994). The issue decided in the prior action must be identical to the issue in the pending action. *State & County Mut. Fire Ins. Co. v. Miller,* 52 S.W.3d 693, 696 (Tex. 2001). Texas courts apply collateral estoppel principles to arbitration awards. *Continental Holdings, Ltd. v. Leahy,* 132 S.W.3d 471, 474 (Tex.App. 2003). However, if an issue was not actually decided in a prior arbitration proceeding or if its resolution was not necessary to the arbitration award, its litigation in a subsequent proceeding is not barred by collateral estoppel. *Id.* at 474-75.

In order to prevail on its motion for summary judgment, HES must establish that the facts determined by the arbitrator and necessary to the award are sufficient to prove, as more likely than not, each and every element of one or the other of the nondischargeability claims. Given that the DEBTOR'S state of mind was not at issue in the arbitration case and that all reasonable inferences must be drawn in favor of the DEBTOR, HES has a tough row to hoe.

The Court will first address the claim under section 523(a)(6), which requires that the conduct in question be willful and malicious. Neither term is defined in the Bankruptcy Code. The Supreme Court has defined "willful" to mean conduct intended to cause harm, not merely intentional conduct that results in an injury that was not intended by the actor. *Kawaauhau v. Geiger,* 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The court drew an analogy with an intentional tort where the actor intends the consequences of the act, not simply the act itself. *Id.* The term *"malicious"* involves acting in conscious disregard of one's duties or without just cause or excuse. *Matter of Thirtyacre,* 36 F.3d 697, 700 (7th Cir. 1994). It is the knowledge of wrongdoing and the absence of excuse that define malicious behavior for purposes of section 523(a)(6). *In re Young,* 428 B.R. 804, 818 (Bankr.N.D.Ind. 2010).

Where the conduct in question involves a breach of a contract rather than commission of a tort, section 523(a)(6) does not generally apply. *See Geiger,* 523 U.S. at 62 (knowing breach of contract could qualify as a situation where the act is intentional but the injury is not, so that the debt is not within the scope of section 523(a)(6)); *In re Williams,* 337 F.3d 504, 509 (5th Cir. 2003); *In re Salvino,* 373 B.R. 578, 589-91 (Bankr.N.D.Ill. 2007) (breach of contract not involving tortious conduct is outside the scope of § 523(a)(6)); *In re Khafaga,* 419 B.R. 539, 550 (Bankr.E.D.N.Y. 2009) (knowing breach of contract is not malicious absent some aggravating circumstance evidencing conduct so reprehensible as to warrant denial of the fresh start that the bankruptcy discharge is intended to provide). *See, also, XCO Int'l Inc. v. Pacific Scientific Co.,* 369 F.3d 998, 1002 (7th Cir. 2004) (breach of contract is not a tort; because liability for breach is strict, contract breakers are often innocent in a moral sense and so should not be punished.).

In its motion, HES contends that the Final Award "provides abundant factual detail" from which the Court "may find directly or by inference" that the DEBTOR intended to harm HES in conscious disregard of his duties without just cause or excuse. HES cites various examples of facts set forth in the arbitrator's summary, such as the DEBTOR'S printing and downloading documents, his delay in turning over information, his demeanor at his exit interview and the delay in turning over the thumb drive. It is apparent HES is asking this Court to use the summary of the evidence set forth by the arbitrator to draw its own original inferences from that summary, and to make original findings based only on that summary as to the elements of the nondischargeability actions asserted here without regard to the elements of the breach of contract action litigated in the arbitration proceeding, and without regard to the findings of ultimate facts actually made by the arbitrator in support of her conclusions that a breach of contract occurred.[1] HES utterly misapprehends how collateral estoppel works.

A court faced with an issue of collateral estoppel is not at leisure to adopt a prior evidentiary record, much less a prior tribunal's mere summary of evidence, as its own and use it to make its own original findings of fact. The second court is limited to the findings of fact actually made by the first tribunal. A plaintiff that relies on collateral estoppel to seek summary judgment on its own affirmative claim bears the burden to identify specific findings in the original, predicate decision that were made to support the outcome there. *In re Khouri,* 397 B.R. 111, 117 (Bankr.D.Minn. 2008). The plaintiff must then link those

---

[1]The record before the Court does not contain a transcript of the evidentiary hearing held by the arbitrator. In effect, HES wants this Court to draw inferences and make findings based not on the evidence heard by the arbitrator, but on her summary of it.

findings to the elements of its claim in the current proceeding. *Id.* The second court may not treat every bit and piece of evidence that supports the first tribunal's decision as if every piece of evidence was itself a separate finding of fact. It is necessary to distinguish the issues of fact that were actually determined from mere evidence. HES fails to recognize this distinction.

The Fifth Circuit recognizes that under Texas law, collateral estoppel bars relitigation of any "ultimate issue of fact" actually litigated and essential to the judgment in a prior suit. *Miller v. J.D. Abrams, Inc. (In re Miller),* 156 F.3d 598, 601 (5th Cir. 1998). Collateral estoppel applies only where the issue previously decided is identical to an issue necessarily under consideration in the second suit and where the issue was necessary to support the judgment in the prior case. *Copeland v. Merrill Lynch & Co., Inc.,* 47 F.3d 1415, 1422 (5th Cir. 1995). Collateral estoppel does not apply unless the issue presented was a "critical and necessary part" of the prior judgment. *Id.* at 1423. An issue is "necessarily decided" if its absence would have precluded the judgment. *In re Woolley,* 288 B.R. 294, 300 (Bankr.S.D.Ga. 2001). If an issue has been determined, but the judgment is not dependent upon its determination, the issue may be relitigated in a subsequent action because findings on nonessential issues have the characteristics of *dicta. Id.* at 301.

In addition to ultimate facts, preclusive effect may be given to findings as to intermediate facts where necessary to the determination of an ultimate fact. *In re Convertible Rowing Exerciser Patent Litigation,* 814 F.Supp. 1197, 1208 (D.Del. 1993). Issue preclusion may apply to evidentiary facts, but only if the parties in the previous litigation treated the fact as important and the previous court treated the fact as necessary to the

judgment. *Grisham v. Phillip Morris, Inc.,* 670 F.Supp.2d 1014, 1032 (C.D.Cal. 2009) (citing

the RESTATEMENT (SECOND) OF JUDGMENTS, § 27 (1980)). Collateral estoppel does not extend

to matters not expressly adjudicated, that can be inferred only by argument from or

construction of the judgment, unless the inferences were necessarily made in the sense that

the judgment could not stand without them. *See Carman v. South Carolina Alcoholic Beverage*

*Control Com'n,* 317 S.C. 1, 6, 451 S.E.2d 383, 386 (S.C. 1994); *Melikian v. Corradetti,* 791 F.2d

274, 277 (3rd Cir. 1986).

The claims asserted by HES that were litigated in the arbitration case include claims

for return of HES property, claims for damages for breach of contract, and a claim for a

permanent injunction. None of these claims are tort claims that require proof of a willful

or malicious intent. HES was denied leave to assert a claim for the tort of misappropriation

of trade secrets and was denied leave to add a claim for breach of fiduciary duty.

Under Texas law, the elements of a breach of contract claim are (1) the existence of

a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the

contract by the defendant; and (4) damages sustained as a result of the breach. *B & W*

*Supply, Inc. v. Beckman,* 305 S.W.3d 10, 16 (Tex.App. (1 Dist.) 2009). A breach of contract

occurs when a party fails or refuses to do something he has promised to do. *Id.*

In a breach of contract action, the defendant's state of mind is not an element of the

cause of action that the plaintiff is required to prove. The arbitrator was not required to

inquire into or make any finding about the DEBTOR'S *scienter* and she did not do so. HES

argues that this Court could infer, from the arbitrator's description of the factual

background, that the DEBTOR intended to harm HES and that he acted maliciously. As

13

indicated above, it is not an appropriate application of the doctrine of collateral estoppel for the second court to draw inferences not drawn by the first court.   Neither is it appropriate to treat the arbitrator's summary as evidence.

The arbitrator did not find that the DEBTOR acted with the intent to do harm to HES or that his conduct was without a valid excuse or justification.   The DEBTOR is thus not precluded from defending the claim asserted by HES under section 523(a)(6).

Even if the Court were to treat the arbitrator's Final Award as an evidentiary record from which original inferences and findings could be drawn and made, as HES suggests the Court should do, that record provides greater support to the DEBTOR than it does to HES.   As described by the arbitrator, the DEBTOR, in his counterclaim, requested a declaration that he "is the rightful owner of the standard industry software program with the packer modifications."   The arbitrator states that the DEBTOR "contends that he is the owner of the software because he is the author of the work" and argues that the software is not a "work for hire" under the Copyright Act.

There was a substantial evidentiary basis for the DEBTOR'S position.   The arbitrator found that the DEBTOR developed the original software program "on his own time in the evenings at his house."   She found that he never shared this program with HES, that HES instructed him not to work on the program, and that the work was, in fact, done on his own time and not as part of his job duties at HES.   Only later did he begin to work on it as part of his job duties when he made "modifications" to it as instructed or requested by HES. The IPA signed by the DEBTOR gave HES the ownership right to any original work of authorship created as an HES employee.   On this basis the arbitrator concluded that the

"November 2004 software version was created by [the DEBTOR] as a company employee for purposes of the IPA." She determined that HES, not the DEBTOR, is the rightful owner of the November 2004 software program.

These facts suggest that the DEBTOR'S actions about which HES complains were done with the legitimate, honest belief that he owned the disputed software and related information, and that his actions were intended to protect that interest, not to harm HES. Apart from this ownership dispute, nothing in the Final Award indicates that the DEBTOR held any ill-will or malice toward HES or that he had a motive or reason to harm HES. The record supports the conclusion that the DEBTOR acted with a valid justification or excuse, that being an honest claim of ownership of the disputed software.

A good faith belief and assertion of a property right takes a debtor's actions outside the scope of section 523(a)(6). The fact that the arbitrator ultimately ruled for HES on the ownership issue, does not diminish the DEBTOR'S defense. As recognized by the Fifth Circuit, a misappropriation of a trade secret under an erroneous belief of entitlement, may be technically wrongful without being fraudulent. *Miller,* 156 F.3d at 603. By all appearances, this is the kind of contract dispute that is outside of the ambit of section 523(a)(6).

Moreover, HES suffered no competitive harm from the DEBTOR'S actions. He delayed returning information, but there was no evidence that he sold or gave protected information to a competitor, or that he used it personally or in his capacity as a Caterpillar employee. The damages awarded to HES by the arbitrator consist entirely of litigation expenses, forensic costs and attorney fees. Damages in the nature of attorney fees and

litigation expenses awarded in a breach of contract action do not constitute a debt "for" the conduct proscribed by sections 523(a)(4) and (a)(6). *In re Al-Suleiman,* 2011 WL 5401875 (Bankr.M.D.Fla. 2011). Section 523(a)(6) requires that the injury itself be intended, not merely that an injury was proximately caused by some intentional conduct. The Final Award would not support the conclusion that the DEBTOR, by his conduct, intended to harm HES by causing it to incur costs and fees.

Section 523(a)(4) excepts from discharge "any debt . . . for . . . embezzlement." Embezzlement is the fraudulent appropriation of property by a person whose initial possession of it was lawful. *Matter of Weber,* 892 F.2d 534 (7th Cir. 1989); *Miller,* 156 F.3d at 602. Embezzlement requires proof that the debtor wrongfully appropriated the property in order to use it for a purpose other than that for which it was entrusted. *Miller,* 156 F.3d at 602 (citing *In re Brady,* 101 F.3d 1165, 1173 (6th Cir. 1996)). Fraudulent intent or *scienter* is a necessary element of embezzlement. *Miller,* 156 F.3d at 602-03; *Weber,* 892 F.2d at 538; *In re Sherman,* 603 F.3d 11, 13 (1st Cir. 2010); *In re Hyman,* 502 F.3d 61, 68 (2nd Cir. 2007). A wrongful appropriation of property under an erroneous belief of entitlement does not equate to the fraudulent intent necessary for embezzlement. *In re Jones,* 445 B.R. 677, 706 n.106 (Bankr.N.D.Tex. 2011); *Miller,* 156 F.3d at 603.

HES asserts that the DEBTOR'S misappropriation of proprietary information amounts to embezzlement, suggesting that even though the arbitrator made no finding of fraudulent intent, such intent could be inferred by this Court. For the reasons stated above, drawing original inferences is not appropriate when applying collateral estoppel. Also as indicated above, if inferences were to be drawn, they would be drawn in favor of the

16

DEBTOR.  There is no evidence in the record that the DEBTOR actually used or benefitted from his post-employment possession of the information that the arbitrator subsequently determined to be owned by HES, all of which was eventually returned.  Furthermore, although it is hypothetically possible that the DEBTOR harbored malice or ill will toward HES or that he intended to embroil HES in litigation for the purpose of causing it to incur extensive attorney fees and litigation-related expenses, on the record before this Court, those inferences are far-fetched.

Accordingly, HES's motion for summary judgment will be denied.  This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate Order will be entered.

###